UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

Case No. 4:08-cv-9

COMPUTER CONSULTING &                                           PLAINTIFF
NETWORK DESIGN, INC.

V.

UNIVERSAL SERVICE ADMINISTRATIVE COMPANY         DEFENDANT

MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss by Defendant Universal Service

Administrative Company (USAC). [DN 11].  Plaintiff alleges claims of defamation and tortious

interference with contract, but Defendant asserts that the claims must be dismissed for a failure to

state on a claim on which relief may be granted.  Fully briefed, this matter is ripe for decision.

I.  Facts

Plaintiff Computer Consulting & Network Design, Inc. (CCND) is an internet service

provider.  Defendant Universal Service Administrative Company (USAC) is a non-profit corporation

designated by the Federal Communications Commission (FCC) to administer a program through

which schools and libraries can obtain discounted internet service.  The program is called the E-rate

program, and was created by the Telecommunications Act of 1996, 47 U.S.C. § 254(h).

School districts can apply to receive discounted services by filing a form (Form 470) with

USAC, requesting discounted services.  USAC then posts that form application on its website for

a minimum of 28 days, during which time internet service providers may submit bids indicating they

would like to provide the requested services.  The school district may then enter a contract for

services with one of the service providers, and price must be the primary factor in selecting a provider. The E-Rate program provides the greatest discounts and supplements to those schools that have the greatest need, with need being determined according to the number of students in the school that qualify for free or reduced cost lunches.

After a school district has entered a contract with a service provider, a second form (Form 471) is filed with USAC to request discounted services. USAC then assigns the request a funding request number (FRN) and later issues a funding commitment decision letter (FCDL) to approve or deny the discounted services. There can be a substantial time lapse between the request for funding and USAC's decision granting or denying funding.

FCC rules forbid service providers from participating in the bidding process. Thus, USAC developed a procedure to help detect improper provider involvement in the bidding. USAC describes this as "pattern analysis," and the procedure helps discover similarities in applications that might result from the involvement of a service provider in the submission of the funding request.

Plaintiff CCND provides internet services to school districts in Kentucky and Tennessee. The Muhlenberg County School District (Muhlenberg), Hopkins County School District (Hopkins), Huntingdon Special School District (Huntingdon), and Hollow Rock Bruceton Special School District (Hollow Rock), all exist in Kentucky or Tennessee and all applied for discounted services through the E-rate program administered by USAC. Each of these school districts entered contracts for services with CCND in January and February of 2004. In 2005, each school district filed Form 471 with USAC requesting funding for services that were to be provided by CCND.

In April, 2007, USAC notified each of the school districts in writing that its pattern analysis

had revealed that the school districts' applications in Form 471 shared similarities with other CCND clients, implying that CCND participated in the completion or posting of each schools Form 470 that had initially solicited bids for services under the E-rate plan.  Immediately after this notification, Hollow Rock canceled its contract with CCND.  Muhlenberg, Hopkins, and Huntingdon were given the opportunity to respond to USAC and explain the similarities, and the school districts were to identify any persons who helped prepare the Form 470. [See DN 12, Exhibits 1-4].  In July, 2007, following the response of the school districts, USAC notified Muhlenberg, Hopkins, and Huntingdon via e-mail and public posting on USAC's website that each school's request for funding was denied because a competitive bidding violation involving CCND had occurred. [See DN 12, Exhibits 5-7].

CCND alleges that the communications to the school districts implying a violation of FCC competitive bidding rules were false and defamatory, and that USAC interfered with existing and prospective contractual relationships between CCND and each of the school districts.  USAC filed a Rule 12(b)(6) Motion to Dismiss arguing that CCND's failure to exhaust administrative remedies is fatal to its claims.

## II.  Legal Standard

Upon a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6), the Court "must construe the complaint in the light most favorable to [the plaintiff], accept all well-pled factual allegations as true and determine whether [the plaintiff] undoubtedly can prove no set of facts consistent with [its] allegations that would entitle [it] to relief."  League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citing Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)). This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). A plaintiff must provide the grounds

for his entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007); Bredesen, 500 F.3d at 527. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." Id. (citing Twombly, 127 S.Ct. at 1965). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." Id. (citing Twombly, 127 S.Ct. at 1969).

**III.  Discussion**

USAC primarily argues that suit in this Court is not proper because CCND did not exhaust its administrative remedies before bringing suit. CCND responds that administrative exhaustion was not necessary in this case because it would not provide adequate remedies. CCND submits that the statements made by USAC were defamatory, and that USAC sufficiently interfered with contractual relations between CCND and the school districts to warrant monetary damages for the tort. While USAC presents alternative arguments in support of its motion to dismiss, the Court finds the matter of exhaustion to be dispositive, and therefore, only this issue will be addressed.

**A.  Principles of the Exhaustion of Administrative Remedies**

The doctrine of administrative exhaustion is a prudential doctrine. The exhaustion requirement ensures that the agency with the most expertise in a particular field is allowed the first attempt to resolve a claimant's issues. See Idaho Sporting Congress, Inc. v. Rittenhouse, 305 F.3d 957, 965 (9th Cir. 2002); Saulsbury Orchards & Almond Processing, Inc. v. Yeutter, 917 F.2d 1190, 1195 (9th Cir. 1990). The primary purposes of the exhaustion requirement are to protect administrative agency authority and to promote efficiency, since "[c]laims generally can be resolved

4

much more quickly and economically in proceedings before an agency than in litigation in federal court." Fazzini v. Northeast Ohio Correctional Center, 473 F.3d 229, 232 (6th Cir. 2006).

The principles of administrative exhaustion were well explained by the Supreme Court in McCarthy v. Madigan, 503 U.S. 140, 144-45 (1992):

> This Court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. See, e.g., Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, and n. 9 (1938) (discussing cases as far back as 1898). Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.
>     As to the first of these purposes, the exhaustion doctrine recognizes the notion, grounded in deference to Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer. Exhaustion concerns apply with particular force when the action under review involves exercise of the agency's discretionary power or when the agency proceedings in question allow the agency to apply its special expertise. McKart v. United States, 395 U.S. 185, 194 (1969). See also Bowen v. City of New York, 476 U.S. 467, 484 (1986). The exhaustion doctrine also acknowledges the commonsense notion of dispute resolution that an agency ought to have an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court. Correlatively, exhaustion principles apply with special force when "frequent and deliberate flouting of administrative processes" could weaken an agency's effectiveness by encouraging disregard of its procedures. McKart v. United States, 395 U.S., at 195.
>     As to the second of the purposes, exhaustion promotes judicial efficiency in at least two ways. When an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided. See, e.g., Parisi v. Davidson, 405 U.S. 34, 37 (1972); McKart v. United States, 395 U.S. at 195.  And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration, especially in a complex or technical factual context. See, e.g., Weinberger v. Salfi, 422 U.S. 749, 765 (1975) (exhaustion may allow agency "to compile a record which is adequate for judicial review").

The Supreme Court's explanation of the exhaustion doctrine demonstrates that the waiver of the exhaustion doctrine should not be taken lightly.  The Sixth Circuit has similarly explained that the doctrine requiring the exhaustion of administrative remedies "must be applied in each case with an

5

understanding of its purposes and the particular administrative scheme involved . . . exhaustion is not required if administrative remedies are inadequate or not efficacious; [or] where pursuit of administrative remedies would be a futile gesture." Shawnee Coal Co. v. Andrus, 661 F.2d 1083, 1093 (6th Cir.1981)(internal citations omitted).

**B. Is Exhaustion Required?**

USAC has its own provisions for administrative remedies and appeals. The method of appeal for USAC decisions is explained in 47 C.F.R. § 54.719(c):

> Any person aggrieved by an action taken by a division of the Administrator, as defined in § 54.701(g), a Committee of the Board of the Administrator, as defined in § 54.705, or the Board of Direcors of the Administrator, as defined in § 54.703, may seek review from the Federal Communications Commission, as set forth in § 54.722.

Thus, any action taken by USAC may be administratively appealed to the FCC, in addition to USAC's internal appeal mechanisms which can also be utilized. 47 C.F.R. § 54.719(a) and 47 C.F.R. § 54.719(b). Based on the simple language of § 54.719, it is apparent that CCND had the opportunity to appeal USAC's actions and funding denial to USAC or the FCC.

USAC argues that exhaustion is mandatory citing cases from two circuits which have so held despite the use of the permissive term "may" as used here. See, e.g. Kobleur v. Group Hospitalization and Medical Services, Inc., 954 F.2d 705, 709 (11th Cir. 1992)("[A]gency regulations promulgated under the authority of the statute may create an exhaustion requirement despite the absence of such a requirement within the text of the statute." ); Kennedy v. Empire Blue Cross and Blue Shield, 989 F.2d 588, 592 (2d Cir. 1993)("The Exhaustion requirement may arise from explicit statutory language or from an administrative scheme providing for agency relief.").

CCND takes issue with the mandatory claim citing the permissive language of the regulation that

6

a party aggrieved by USAC "*may* seek review from the Federal Communications Commission." <u>47 C.F.R. § 54.719(c)</u>(emphasis added).

"Of 'paramount importance' to any exhaustion inquiry is congressional intent.  Where Congress specifically mandates, exhaustion is required.  But where Congress has not clearly required exhaustion, sound judicial discretion governs." <u>McCarthy v. Madigan</u>, 503 U.S. 140, 144 (1992) (internal citations omitted).  Here, the statutory language states that an aggrieved party may seek review with the FCC.  <u>47 C.F.R. § 54.719(c)</u>.  While the statute does not indicate that exhaustion is mandatory, a Court may decide whether prudence demands that administrative remedies be exhausted in a particular case.  "In situations in which 'the meaning of [regulatory] language is not free from doubt,' the reviewing court should give effect to the agency's interpretation so long as it is 'reasonable,' " <u>Martin v. OSHRC</u>, 499 U.S. 144, 150 (1991) (quoting <u>Ehlert v. United States</u>, 402 U.S. 99 (1971)).  Further, "[i]t is a well settled principle that where Congress establishes a special statutory review procedure for administrative action, that procedure is generally the exclusive means of review for those actions." <u>Greater Detroit Resource Recovery Authority v. United States Environmental Protection Agency</u>, 916 F.2d 317, 321 (6th Cir. 1990).

In addition to the provisions for USAC review in <u>§ 54.719</u>, the FCC has further provisions for administrative review in <u>47 U.S.C. § 405(a)</u>.[1]  This demonstrates that Congress and the FCC

---

[1]

(a) After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under section 155(c)(1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for reconsideration only to the authority making or taking the order, decision, report, or action; and it shall be lawful for such authority, whether it be the Commission or other authority designated under section 155(c)(1) of this title, in its discretion, to grant such a reconsideration if sufficient reason therefor be made to appear. A petition for reconsideration must be filed within thirty days from

recognize that the FCC can best address the specialized matters handled and regulated by the FCC.

To satisfy exhaustion under § 405, the FCC itself, and not merely an FCC bureau, must have had

the opportunity to consider an issue.  Coalition for Noncommercial Media v. FCC, 249 F.3d 1005,

1009 (D.C. Cir. 2001). Further demonstrating this specialized nature, appeals of FCC decisions are

to be taken directly to the Court of Appeals, entirely bypassing the district courts.  47 U.S.C. § 402.[2]

Under the current statutory construction, the lower courts are not intended to examine FCC issues.

Explaining the FCC review, the D.C. Circuit has stated, "Section 405 of the Communications Act

provides that the Commission [the FCC] must be afforded an 'opportunity to pass' on an issue as

a condition precedent to judicial review."  Bartholdi Cable Co., Inc. v. F.C.C., 114 F.3d 274, 279

(D.C. Cir. 1997).  While the judicial review provisions of § 405 contain no exceptions on their face,

the D.C. Circuit has construed it to leave "room for the operation of sound judicial discretion to

determine whether and to what extent judicial review of questions not raised before the agency

should be denied."  Washington Ass'n for Television and Children v. F.C.C., 712 F.2d 677, 681

(D.C. Cir. 1983), quoting Action for Children's Television v. F.C.C., 564 F.2d 458, 469 (D.C. Cir.

---

the date upon which public notice is given of the order, decision, report, or action
complained of. No such application shall excuse any person from complying with or
obeying any order, decision, report, or action of the Commission, or operate in any
manner to stay or postpone the enforcement thereof, without the special order of the
Commission. The filing of a petition for reconsideration shall not be a condition
precedent to judicial review of any such order, decision, report, or action, except
where the party seeking such review (1) was not a party to the proceedings resulting
in such order, decision, report, or action, or (2) relies on questions of fact or law
upon which the Commission, or designated authority within the Commission, has
been afforded no opportunity to pass.
47 U.S.C. § 405(a).

[2]"Appeals may be taken from decisions and orders of the Commission to the United
States Court of Appeals for the District of Columbia in any of the following cases . . ." 47 U.S.C.
§ 402(b).

1977).

The FCC regularly processes appeals and requests for review under 47 C.F.R. § 54.719. See, e.g. In the Matter of Request for Review of the Decision of the Universal Service Administrator by Education Legislative Services, 2004 WL 241448 (F.C.C.), 19 F.C.C.R. 2387 (Feb. 11, 2004); In the Matter of Request for Review Lake Erie Educational Computer Association Elyria, Ohio, 2004 WL 224689 (F.C.C.), 19 F.C.C.R. 2159 (Feb. 6, 2004).   The FCC rulings indicate that the Commission is well-versed in the technicalities of USAC administration and deals with appeals of USAC matters regularly.

USAC primarily argues that efficient administration of USAC programs requires the enforcement of the exhaustion doctrine in this case.  First, USAC submits that the FCC adopted the administrative appeal process of 47 C.F.R. § 719(c) in order to maintain supervision over the administration of USAC.  USAC submits that efficient administration of the E-rate program requires that the FCC be the primary appellate body for USAC decisions, otherwise USAC could be subject to various tort liabilities in different jurisdictions based on the jurisdictional case law.

USAC further submits that the FCC's interpretation of its rules and directives are entitled to great deference by this Court.  And USAC finally argues that Congress has directed that judicial review of FCC decisions is exclusively delegated to the Courts of Appeals, as noted above.  See Bartholdi Cable Co., Inc. v. F.C.C., 114 F.3d 274, 279 (D.C. Cir. 1997).

After considering the nature of the regulatory scheme, the purposes to be served by the exhaustion doctrine, and in the exercise of judicial discretion, the Court concludes that CCND should have exhausted its administrative remedies prior to seeking relief here.  CCND's claims all hinge upon the allegation that USAC's conduct in administering the E-Rate Program was "improper,

wrongful, unlawful and reckless."  USAC contends that the FCC has issued orders to USAC approving and requiring the conduct complained of herein.  Thus, in order to address CCND's claims in this case, it would be necessary to determine the propriety of the actions taken by USAC in the administration of the program.  The agencies have the expertise to address these matters.  The facts indicate that USAC and the FCC have a complete and adequate administrative review process in place.  They should be given the opportunity to pass on the issues underlying CCND's claims prior to judicial review.  If this Court and other courts across the country were to intervene in USAC matters, a delirious web of case law could be created.  Exhaustion principles apply with great force when their disregard could weaken the effectiveness of agency procedure.  McCarthy v. Madigan, 503 U.S. at 14.

### C. Futility

CCND submits that its claims are tort matters and its damages monetary, neither of which can be addressed within the administrative process.  While this is true,  administrative review does allow for a full and complete look at  USAC's conduct.  Thereafter, an aggrieved party may obtain judicial review by a Court of Appeals.

If it was determined administratively that USAC acted in accordance with proper FCC directives and the Court of Appeals agreed, this Court would be bound by that conclusion and CCND's claims would not be viable.  If it was determined that USAC's conduct was wrongful or illegal, then arguably, CCND would have viable state law claims.  However, the determination of whether USAC acted in accordance with proper FCC directives is a matter which is squarely within the realm of the FCC and the Courts of Appeals, not this Court.

Furthermore, as noted above, when an agency has the opportunity to correct its own errors,

10

a judicial controversy may be avoided.  Thus, it cannot be said that exhaustion in a case such as this is futile.

**IV.  Conclusion**

       For the foregoing reasons, exhaustion of administrative remedies is required.  Therefore, USAC's Motion to Dismiss is hereby GRANTED [DN 11].

cc: counsel of record